**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**JOSEPH BROWN**                                                                                          **PLAINTIFF**

V.                                                              CIVIL ACTION NO. 3:24-cv-318-CWR-LGI

**HINDS COUNTY, MISSISSIPPI,**
**SHERIFF TYREE JONES, in His Individual Capacity**
**as Sheriff of Hinds County, Mississippi,**
**and JOHN AND JANE DOES 1 – 100**                                                        **DEFENDANTS**

## PLAINTIFF'S ORIGINAL COMPLAINT

*Jury Trial Demanded*

1. This complaint is brought by Joseph Brown (hereinafter, "Plaintiff"), by and through undersigned counsel, against Hinds County, Mississippi, Sheriff Tyree Jones, and John and Jane Does 1-100, (hereinafter, "Defendants").

## JURISDICTION AND VENUE

2. Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. § 1983 as well as the 8th and 14th Amendments to the United States Constitution.

3. Venue is appropriate in this Court as all acts and/or omissions occurred in Hinds County, Mississippi, which is located within the Southern District of the United States District Court, Northern Division.

## PARTIES

4. Joseph Brown (hereinafter, "Plaintiff") was at all times material to this Complaint an adult incarcerated at the Hinds County Detention Center (hereinafter, "HCDC"). Substantial acts, omissions, and events that caused the Plaintiff's injuries took place in Hinds County,

Mississippi. At the time of the incidents giving rise to this Complaint, the Plaintiff was a 28-year old citizen of the State of Mississippi, and a pre-trial detainee incarcerated at HCDC. Plaintiff is an adult resident citizen of Hinds County, Mississippi. Plaintiff brings this action individually against Hinds County, Mississippi, Sheriff Tyree Jones in his Individual capacity as Sheriff for Hinds County, Mississippi, and John and Jane Does 1-100.

5. Defendant, Hinds County, Mississippi, is located within the Southern District of the United States District Court, Northern Division. Hinds County, by and through the Office of the Hinds County Sheriff's Department, manages and operates the HCDC. Hinds County has the responsibility for providing humane care and treatment consistent with all constitutional and American Correctional Association standards. Hinds County officials and policymakers knew that the HCDC was understaffed with untrained officers as early as August 2013 when Dr. James Austin conducted his inspection of the jail. Throughout the following decade, numerous teams of experts have continued to note the jail is not adequately staffed and that the jailers are not properly trained. Defendant Hinds County is subject to the in personam jurisdiction of this Court by service of process upon its Board of Supervisors, by and through the Hinds County Chancery Court Clerk, Eddie Jean Carr, who also serves as the Clerk of the Hinds County Board of Supervisors, located at the Hinds County Chancery Courthouse, 316 South President Street, Jackson, Hinds County, Mississippi 39201.

6. Defendant Tyree Jones was the duly elected Sheriff of Hinds County, Mississippi during the incidents giving rise to this Complaint. Sheriff Jones was elected Sheriff for Hinds County and sworn into office on December 3, 2021, and he "immediately" met with HCDC administrators and the Board and "pledged his support" to improve the HCDC.[1] Sheriff Jones was

---

[1] See *U.S. v. Hinds County*, et. al., Civ. No. 3:16-cv-489-CWR-RHWR, United States District Court for the Southern District of Mississippi Northern Division, DOC #105, filed 12/14/2021, page 2.

the policy maker for the Hinds County Sheriff's Department, which includes the HCDC. Sheriff Jones knew years prior to this Complaint that the HCDC was understaffed with untrained officers. Sheriff Jones was on notice about the numerous problems at the HCDC including but not limited to shortage of staff, untrained officers and guards, faulty cell doors which do not lock, and the inability to protect inmates from harm. Sheriff Jones was aware of the numerous hearings regarding the consent decree with the United States of America which was entered into on June 23, 2016.[2] Over the course of the next several years, independent expert jail consultants continued to note the HCDC was not adequately staffed, jailers were not trained, cell doors continued to be faulty, and inmates were not protected from harm. For example, in 2015, a summary of findings of the HCDC noted "the jail does not provide prisoners with reasonable safety and minimum levels of protection from violence by other prisoners and staff members . . . The jail also has a serious contraband problem. Ready prisoner access to weapons, cell phones, drugs, and other illicit materials contribute to the ongoing risk of harm to both prisoners and staff." Reports noted that the lack of adequate staffing and security exacerbated a serious contraband problem and the HCDC's contraband problem reflected a "broader problem of poor prisoner supervision." Previous litigation revealed that the HCDC staffed one (1) jailer per pod, which was deemed inadequate by past independent court appointed experts. Sheriff Jones knew that HCDC was dangerously understaffed with untrained jailers for years prior to this incident, and it was therefore foreseeable that this would create a dangerous environment for inmates. Sheriff Jones' actions and inactions created a policy at the HCDC of understaffing the jail with untrained jailers and failing to protect inmates, like the Plaintiff, from harm. Accordingly, Sheriff Jones is sued in his individual capacity. Sheriff Jones may be served with process at his place of employment or residence.

---

[2] See *U.S. v. Hinds County*, et al., Civ. No. 3:16-cv-489-CWR-RHWR.

7. Plaintiff is ignorant as to the identities of Defendant John and Jane Does 1-100 who are unknown officers, employees, agents, and/or servants of the Hinds County Sheriff's Office and/or Defendants. Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendants herein, and were at all times acting under color of law with the permission and consent of Defendant within the course and scope of their employment.

## **FACTS**

8. On or about September 21, 2022, the Plaintiff was arrested by Capitol Police in Jackson, Mississippi for allegedly driving without a driver's license, no proof of insurance, reckless driving, expired tag, and fleeing. At all times material to this Complaint, Plaintiff was a pretrial detainee at the Hinds County Detention Center ("HCDC") in Raymond, Hinds County, Mississippi. As detailed below, on or about March 22, 2023, and March 28, 2023, the Plaintiff was assaulted at the HCDC. As a result of the assaults at the HCDC, the Plaintiff suffered a traumatic brain injury ("TBI").

9. Despite numerous public records requests beginning as early as November 7, 2023, the Hinds County Sheriff's Office ("HCSO") has not responded to or produced records in compliance with the Mississippi Public Record Act. On April 25, 2024, the Mississippi Bureau of Investigation ("MBI") confirmed that it could "locate no case file where the Mississippi Department of Public Safety / Mississippi Bureau of Investigation worked this case." Plaintiff will amend this Complaint to allege facts currently unknown due to HCSO's refusal and failure to

produce public records relative to the Plaintiff's assaults that occurred on or about March 22, 2023, and on or about March 28, 2023, at the HCDC.

10. The HCDC is comprised of three pods; A, B and C. Each pod has one guard tower and four (4) housing units numbered 1, 2, 3 and 4. Historically, each housing unit had one floor officer assigned. As shown in the Monitoring Reports, every independent expert that visited HCDC since 2013 opined that one floor officer per separate housing unit is inadequate to protect inmates from violence. Regardless, for months, if not years, prior to this incident, Hinds County and Sheriff Jones failed to have *any* correctional officers assigned to the housing units. The inmates were left unsupervised and essentially, they policed the housing units as they saw fit.

11. On or about March 22, 2023, unknown inmates and jailers assaulted Plaintiff at the HCDC in the C-Pod in C2. According to medical records from Merit Health Central, Plaintiff arrived at the Merit Health Central Emergency Department on March 22, 2023, at 11:07 a.m., with a "head injury" and "scattered contusions and abrasions" to his face and scalp. According to medical records, the "details of the injury" were not clear.

12. According to medical records, upon arrival at Merit Health, the Plaintiff was sedated with Haldol and Ativan in order to obtain a CT scan. Radiologist findings noted a "head injury assault at prison." Plaintiff was discharged from Merit Health to the HCDC at 1:36 p.m., roughly two (2) hours after being admitted for a head injury. Brown's discharge notes ordered a follow up with Plaintiff's private physician within 2-3 days for further diagnostic workup, to recheck complaints, and for continuity of care. Plaintiff's diagnosis upon discharge on March 22, 2023, was "*altered mental status after head injury*."

13. On or about the evening of March 28, 2023, HCDC officers Harry Rutledge, Arkeisha Martin, and Kayla Sims were arrested while on duty at the HCDC and booked into the

HCDC following an investigation by the HCSO Criminal Investigation Division, Patrol Vision, and Narcotics Division's "Operation Contraband Crackdown." Rutledge and Martin were charged with conspiracy to introduce contraband to a penal facility and introduction of contraband to a penal facility. Sims was charged with introduction of contraband to a penal facility.

14. On or about the night of March 28, 2023, Plaintiff was assaulted again at the HCDC. According to medical records from the University of Mississippi Medical Center ("UMMC"), Plaintiff was found "down and unresponsive" in his cell. The assault was directly caused by Hinds County's policies of understaffing the HCDC with untrained guards, malfunctioning cell doors, and guards being compromised by inmates who are gang members. Specifically, inmates were able to enter the Plaintiff's cell and brutally assault him due to the lack of staff to supervise and protect him from harm. The Defendants' employees were aware that the Plaintiff had recently reported that certain guards were bringing contraband into the HCDC for inmates who were gang members. Gang members learned through Hinds County employees that the Plaintiff was the cause. As a result of the Plaintiff reporting that HCDC guards were smuggling contraband into the facility, the contraband flow stopped. The guards knew that the Plaintiff was in danger yet did not warn him or protect him from harm. Instead, HCDC employees turned a blind eye, and the Plaintiff was assaulted, resulting in permanent brain damage.

15. Plaintiff arrived at UMMC with "traumatic injuries" at approximately midnight on the night of March 28 / early morning of March 29, 2023. Plaintiff was intubated due to his inability to maintain oral secretions (he was choking on his blood) and unresponsiveness. Medical records noted an assault, an open fracture of the right and left sides of the mandible, an open fracture of the nasal bone, a hematoma of the right auricular region, and a hematoma of the nasal septum. Plaintiff required surgery to repair facial fractures, but due to the extensive swelling, surgery was

scheduled for April 7, 2023.

16. According to medical records, on March 29, 2023, a CT scan taken at UMMC revealed extensive craniofacial fractures, fractured jaw, fractured nose, fracture of the right sphenoid plate, acute comminuted fractures of the anterior, lateral, and posterior walls of the right maxillary sinus, and significant soft tissue swelling and hematomas involving the head and face. The Plaintiff's jaw was wired together with two Bridal wires and sutures to close a mucosal tear from the fracture. On March 30, 2023, Brown's discharge plans/needs were "unclear at present."

17. According to medical records, on March 31, 2023, the Plaintiff was discharged from UMMC to Hinds County Detention Center, Registered Nurse (RN) Sanders. UMMC recorded a Care Plan including Occupational Therapy (OT), Physical Therapy (PT), and Speech Language Pathology (SLP) - Dysphagia/Suspected Dysphagia. Plaintiff was to begin OT on March 31, 2023, with the goal by discharge being to perform self-care activities at the highest level of function for planned discharge setting. Plaintiff was to begin PT on March 31, 2023, with the goal by discharge being to perform mobility at the highest level of function for planned discharge setting. Plaintiff was to begin SLP on March 30, 2023, with the goal to tolerate the least restrictive diet with minimized risk of aspiration. Currently, it is unknown whether the Defendants provided Plaintiff access to timely and adequate medical care and treatment consistent with documented orders in response to the assaults that occurred at the HCDC. Upon information and belief, Plaintiff did not receive timely and adequate medical care and treatment consistent with documented orders which the Defendants were or should have been aware of.

18. According to medical records, on March 31, 2023, Plaintiff was discharged from UMMC to the HCDC on a liquid only diet with prescriptions for Amoxicillin, Bacitracin, and Oxycodone. Medical records reflected that Plaintiff was to follow up with trauma surgery as

needed, follow up with Oral and Maxillofacial Surgery as scheduled on April 7, 2023, and to follow up with Plaintiff's primary care provider at the next available appointment for continued care of his medical condition.

19. Due to HCSO's refusal to produce public records relative to Plaintiff's incidents at the HCDC, it is currently unknown whether Plaintiff received timely and adequate access to medical care and treatment. It is unknown whether Plaintiff received medical observation when he returned to the HCDC. Upon information and belief, Defendants denied Plaintiff his constitutional right to timely and adequate medical care and treatment.

20. On October 31, 2023, the Honorable Judge Faye Peterson in the Circuit Court of the Second Judicial District of Hinds County lowered the Plaintiff's bond from $15,000.00 to $2,000.00 in the form of an unsecured bond. On or about November 6, 2023, approximately four hundred eleven (411) days after his arrest September 21, 2022, the Plaintiff was released from the HCDC.

21. On March 20, 2024, an MRI (Magnetic Resonance Imaging) taken at Diagnostic Imaging Services revealed injuries consistent with suffering a traumatic brain injury ("TBI") consistent with suffering a head trauma. The Plaintiff's only history of head trauma consists of the assaults that he suffered at the HCDC.

22. Due to the Defendants' actions and inactions, the Plaintiff suffered two brutal assaults at the HCDC. As a result of the assaults, Plaintiff sustained permanent brain damage and will need medical treatment for the foreseeable future, and potentially for the rest of his life.

23. Hinds County officials, including the Board of Supervisors and Sheriff Jones, have long been aware of the dangerous, violent, and poor conditions at the HCDC. Representatives from the Hinds County Sheriff's Office have regularly advised the Hinds County Board of

Supervisors ("Board") about the many problems at HCDC, requesting that the problems be addressed. In response to numerous repeated incidents of violence and inmate uprisings that have occurred at the HCDC, as well as the public outcry and media attention, the Hinds County Circuit Court entered an Order on July 23, 2013, mandating that the Hinds County Grand Jury perform an intensive and in-depth evaluation of the conditions of the Detention Center, and make its recommendations to the Court as to its findings.

24. On September 17, 2013, the Report of the Hinds County Grand Jury was filed with the Circuit Clerk of the First Judicial District of Hinds County, wherein it determined that "the Hinds County Detention Center (HCDC) is in deplorable condition and inadequately staffed. In its present state, the HCDC poses major security risks to inmates, staff of the facility, visitors to the facility, and to the citizens of Hinds County. The facility also poses a major liability risk to Hinds County." The Report adopted the Assessment Report generated by Dr. James Austin, Ph. D; his sixteen (16) page Report prepared at the request of the Grand Jury documented numerous egregious and emergent issues in existence at the Detention Center warranting immediate correction. *See* Report of Hinds County Grand Jury attached hereto and incorporated herein by reference as Exhibit "A". Despite the Grand Jury Order, compliance by Hinds County officials was minimal, at best.

25. In response to an egregious number of serious incidents that have occurred in recent years at the HCDC (many of which having taken place after the Grand Jury's Report) that have not only resulted in serious physical harm (including death) to both staff and inmates, but undue property damages, financial loss and the denial of inmates' constitutional rights, the United States Department of Justice's Civil Rights Division ("DOJ") instituted an in-depth investigation into the facility and its conditions. On May 21, 2015, the DOJ released its findings, pursuant to the Civil

Rights of Institutionalized Persons Act, 42 U.S.C. § 1997. The twenty-nine (29) page Report (hereinafter, "DOJ Report") concludes that the HCDC is in violation of the Eighth and Fourteenth Amendments of the United States Constitution, outlining therein a pattern and practice of Constitutional violations and mandating the immediate implementation of very specific remedial measures. *See* Report attached hereto and incorporated herein by reference as Exhibit "B".

26. As a result of the DOJ report, Hinds County entered into a consent decree on June 23, 2016, with the DOJ, a copy of which is attached as Exhibit "C". Hinds County agreed to, inter alia, develop policies and procedures to protect inmates from harm, hire sufficient numbers of jailers and provide training and supervision over these jailers to ensure that inmates are protected from harm. The court appointed a group of experts to make periodic visits to the jail to ensure Hinds County was complying with the consent decree.

27. During the course of monitoring the consent decree, the court held numerous hearings, both in person and telephonically. Hinds County officials, including Sheriff Jones, were present for these hearings. During the hearings, one of the court appointed experts presented summary testimony concerning the most recent onsite visits. As a result of attending the hearings, Hinds County and its officials including Sheriff Jones had first-hand knowledge, prior to the Plaintiff's assaults, about the unconstitutional conditions of confinement at the HCDC.

28. The Court Appointed Monitor's 9th Report filed in November of 2018, attached as Exhibit "D", shows that the already low staffing numbers dropped from 251 in October 2017 to 231 in June 2018. An approved policy and procedures manual was still not in place even after two years of monitoring. There were 92 requirements that were set forth in the consent decree. Of those 92, HCDC remained non-compliant in 54 areas. Hinds County and its officials blatantly ignored their duties to protect inmates from harm as set forth in the consent Decree. During the four months

between the September 2018 and January 2019 site visits, 30 inmate assaults were reported at HCDC.

      29.     The Court-Appointed Monitor's 7th Report filed March 5, 2019, attached as Exhibit "E", showed no appreciable progress in three critical areas: staffing, security, and the development of policies and procedures. The expert findings are set forth verbatim: "Over the past year and a half, the number of filled positions has fluctuated between 231 and 251. The current number of officers available represents a decrease of 13 since the previous site visit. ***Because of the staff shortage, none of the general housing units at the Raymond Detention Center (RDC) have an officer assigned inside so as to permit direct supervision of the inmates.*** In fact, on separate day-shift inspections during the January 2019 site visit, no officers were on duty (other than the control room officer) in two out of three pods. In Housing Unit A1 (Juvenile), no officer was present. In Pod C, 1 ISO (Mental Health) and 4 ISO (Suicide Watch) were **both** covered by one officer. Technically, that is impossible, because inmates on suicide watch require *constant supervision*. On a subsequent inspection, the officer assigned to cover both of these posts was located sitting in a chair in the control room. As noted in previous reports, because of the shortage of staff, and the fact that no officers are assigned to work inside the housing units, assaults and escapes (to retrieve contraband from outside the facility) are often not discovered as they occur, rather after the fact. Since the time of the last site visit there were 30 inmate assaults reported at RDC including multiple stab wounds and lacerations." The cell doors, a basic security requirement, are still malfunctioning: "Inoperative and malfunctioning security doors throughout the Jail System have always been a significant problem, as has been documented in detail in each of the previous Monitoring Reports. Unfortunately, instead of making progress toward rectifying this situation, Hinds County has allowed it to degenerate to a critical and dangerous level. Because so many of the housing unit

entry slider doors at the RDC no longer work, there is only one set of keys available in each pod and the retrofitted safety vestibule (cage) doors are left open when officers enter the units, there is the potential for a large-scale security breach."

30. The Court-Appointed Monitor's 8th Report filed June 27, 2019, attached as Exhibit "F", was filed just the day before a riot took place at the HCDC which led to several inmates being taken to hospitals. This report shows little to no progress in making improvements at the HCDC. The United States Department of Justice filed a motion seeking a contempt ruling against Hinds County, attached as Exhibit "G". The memorandum brief in support of the motion stated that

> Defendants have missed the deadlines, failed to implement the Court-appointed Monitor's technical assistance recommendations, and provided no plan to comply with the Settlement. ***The Jail remains a violent, dangerous facility, with numerous assaults and a recent prisoner-on prisoner homicide.***

Ex. G @ p. 2. (emphasis supplied).

31. In 2021, conditions remained poor at HCDC, if not worse. The Court Appointed Monitor's Fourteenth Monitoring Report filed on July 27, 2021, attached as Exhibit "H", showed that the already low staffing numbers continued. Direct supervision operation was deemed the "only way to retake control" of the HCDC; however, the HCDC did not have enough staff to operate as a direct supervision jail. The report stated that the C-Pod housing units were routinely left unattended, resulting in a number of assaults and contraband "as high in C-Pod as it is in A-Pod where staffing is so low that, on occasion, the only officer present is stationed in the control room" and is responsible for supervising all four (4) pods. The monitors noted the following: "There have been literally as many incidents in C-Pod (supposedly direct supervision) as in A-Pod (which is known to be woefully understaffed) (e.g. in May there were 27 incident reports for A-Pod and 27 incident reports for C-Pod). No one works inside the housing units there and as was

noted in several incident reports, the only staff member in A- Pod is the Control Room Office . . . Meanwhile, A-Pod continues to be an unmanageable housing area. Inmates are not supervised. According to the Lieutenant in charge of Booking (and Classification), "[s]ome have developed their own committee system in which they choose who is accepted into their unit." Maintenance issues were completely unacceptable. As has been reported numerous times previously, rather than fix damaged cells, the County simply welded some cell doors shut. Inmates were still able to fill those cells with trash through the broken door windows, thus turning them into unsanitary "trash dumpster cells" which serve as a breeding ground for vermin." The report went on to state that the volume of contraband at the HCDC had increased, rather than diminished, and "no jail can operate effectively when almost half of the inmates in a housing area have contraband." "Suffice it to say that too much contraband finds its way" into HCDC.

32. In response to Hinds County's systemic failure to bring the jail up to minimum constitutional standards, on November 23, 2021, District Judge Carlton Reeves filed a Show Cause Order against Hinds County demanding the County to show why it should not be held in contempt.

33. The Court Appointed Monitor's Fifteenth Monitoring Report filed on November 24, 2021, attached as Exhibit "I", noted that Hinds County had not adequately addressed policies and procedures for "direct supervision" of housing units. The C-Pod reopened in October 2020 and was to be staffed for and operated as a direct supervision area. As of November 24, 2021, housing units were still frequently left unattended and inmates kept locked down in cells for extended period of time resulting in extensive damage caused by inmates, an unacceptable level of contraband, and assaults between inmates that are "all too common."

34. On February 4, 2022, District Judge Carlton Reeves found Hinds County and its Board in contempt of court due to its continued noncompliance with "more than two dozen

provisions of the Consent Decree."

35. On March 23, 2022, a Second Order of Contempt was filed against Hinds County and its Board of Supervisors due to its failure to comply with the Consent Decree.

36. The latest Court Appointed Monitor's Eighteenth Monitoring Report filed on December 12, 2022[3], just over three (3) months before the Plaintiff's assaults, reported that "the shortage of staff is such that supervisors are unable to perform their usual duties because they must fill in for correctional officers and stand posts for them. (See Exhibit "J"). The Report noted that staff shortages "also means that well-being checks are not performed as required by policy." Since 2012, the C-Pod has been rebuilt twice and B-Pod once due to damage caused by unsupervised inmates. "When C-Pod re-opened in October 2020, the County/HCSO committed to having it operate as a Direct Supervision housing area. Not only did that not happen, but the lack of staff has resulted in the current condition where the entire facility is left in the hands of the inmates and the progress that had been made toward implementing Direct Supervision has been overturned."

37. As a result of the Defendants' consistent failure to adequately staff the HCDC, adequately train and supervise staff, and failure to protect inmates at the HCDC from harm, the Defendants created a facility with unconstitutional conditions of confinement. These conditions resulted in the Plaintiff's assaults and ultimately the Plaintiff's traumatic brain injury (TBI).

## 1983 CAUSES OF ACTION:
## EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS:
## PROTECTION FROM HARM AND DANGEROUS CONDITIONS OF CONFINEMENT

38. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 37 hereinabove. Hinds County, acting by and through its elected and appointed officials, and Sheriff

---

[3] On December 28, 2022, the Court of Appeals for the Fifth Circuit ordered the Monitoring Team and Receiver to suspend their work after Hinds County moved to stay the new injunction and receiver orders pending appeal. See *United States v. Hinds County*, et al., No. 22-60203 c/w Nos. 22-60301, 22-60332, 22-60332, 22-60527, 22-60597, Document: 00516591154, filed 12/28/2022.

Jones acted with deliberate indifference in the allegations listed above. The Plaintiff incorporates herein all expert reports and DOJ pleadings attached as Exhibits A-J discussing the conditions of the HCDC.

39. Defendant Hinds County, by and through Sheriff Jones and Doe Defendants 1-100 in their individual and official capacities, established customs, policies and procedures which directly and proximately caused the deprivation of the Plaintiff's constitutional rights as alleged herein. Defendants were deliberately indifferent to the safety of the Plaintiff and other inmates housed at the HCDC. As a result of these policies, the Defendants failed to protect the Plaintiff and created unconstitutional conditions of confinement.

40. Such unwritten policies, customs and practices include, but are not limited to the following:

    a. inadequate and improper training, supervision and discipline of corrections officers;

    b. inadequate and improper procedures and practices in screening, hiring, training, supervising and disciplining officers who practice, condone or use excessive force upon inmates, including the plaintiff in violation of their constitutional rights.

    c. inadequate and improper procedures, policies and practices for investigating improper activities by officers either through offender complaints of misconduct or through internally-initiated complaints or investigations.

    d. inadequate or improper procedures, policies and practices for identifying and taking appropriate action against officers who are in need of re-training, corrective measure, reassignment, or other non-disciplinary actions, through a positive or early warning system designed to prevent the violation of inmates' rights.

    e. officers condoning and allowing inmates to fight;

    f. failing to protect inmates from harm;

      g.      failing to prevent incidents of violence about which Hinds County employees had warning;

      h.      failure to properly classify inmates;

      i.      failure to have a protective custody system;

      j.      maintaining a jail with inadequate security, such as properly locking cell doors and knowingly allowing inmates access to materials which they then turned into "shanks";

      k.      failing to address the smuggling of contraband into the facility; and

      l.      the chronic understaffing at the jail and hiring jailers with little to no training or supervision.

      m.      Failing to conduct shakedowns to recover contraband.

      n.      Failing to conduct safety checks in housing units or having officers assigned to housing units

41. By exhibiting deliberate indifference to the substantial risk of harm Plaintiff faced as a result of Hinds County's policies and practices set forth above, resulting in Plaintiff's assault by other inmates, and by generally failing to protect Plaintiff from harm, the Defendants violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

## EPISODIC ACTS OR OMISSIONS

42. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 41 hereinabove.

43. As demonstrated in the DOJ Reports and other expert findings and DOJ pleading contained in Exhibits A-J, Hinds County and Sheriff Jones maintained and operated a jail in such a manner as to cause the pervasive deprivation of inmates' constitutional rights in every respect and at every level. Plaintiff was forced to live in this jail and endure the action and inaction of its

officials, as well as the jailers and jail staff acting in accordance with jail policies, customs and practices, under color of law, exhibiting callous and deliberate indifference, in depriving him of his rights guaranteed under the Constitution and laws of the United States.

44.   Hinds County and Sheriff Jones, as well as jailers and jail staff acting pursuant to jail policy, practice and customs, created and required inmates to live in a jail that was deficient in so many respects that it was not suitable for human confinement. These actions resulted in the infliction of punishment on each of the inmates who were forced to live there, including the Plaintiff.

45.   As shown hereinabove, Hinds County and Sheriff Jones and/or other Doe Defendants adopted, implemented and permitted many other policies, practices and customs that deprived most, if not all, inmates, including Plaintiff, of their right to be protected from harm and their right not to be punished during their pretrial confinement. These included policies, customs and practices, whether written or unwritten, that were expressly announced, sanctioned and/or implemented by Sheriff Jones as final policymaker of the HCDC. They also included policies, practices and customs which, though possibly not formally adopted, had become so widespread, well-settled and deeply imbedded in their application, use, employment and acceptance in the jail to have become the policies of these Defendants.

46.   The policies, practices and customs set forth in the preceding paragraph, as well as others which may come to light in the course of this litigation, resulted in numerous, repeated, pervasive and persistent deprivations of inmates' rights to be protected from harm under both the Eighth and Fourteenth Amendments at the HCDC. Plaintiff was brutally assaulted by inmates due to the Defendant's unconstitutional policies, practices and customs.

47. Jailers and jail staff, including the Doe Defendants, acted, or failed to act, in accordance with the official policies, customs and practices of Sheriff Jones and Hinds County, or at the direction of and with the approval of these officials, in depriving Plaintiff of his rights as described herein. The policies, practices and customs were moving forces in the action and inaction for jailers, and jail staff, and these jailers and jail staff acted with deliberate indifference to the rights, welfare and medical needs of and other constitutional rights of the Plaintiff.

48. The deprivation of the Plaintiff's rights by Defendants, as described herein, directly and proximately caused Plaintiff to suffer severe permanent physical and mental personal injury. The Plaintiff suffered excruciating pain, and extraordinary mental and emotional pain and anguish.

49  Plaintiff seeks recovery of all compensatory damages to which he is entitled. Plaintiff further seeks recovery of punitive damages from Sheriff Jones, and the individual Doe Defendants named herein (all in their individual capacities,) for the conduct in callous and reckless disregard for the rights, welfare and needs of the Plaintiff.

## RATIFICATION

50. Hinds County, its policymakers, specifically Sheriff Jones, and the Doe Defendants 1-100 were advised about the Hinds County incident involving Plaintiff. Hinds County, by and through its policymakers, specifically Sheriff Jones, ignored evidence of a widespread disregard of policies and procedures intended for the protection of inmates including the Plaintiff, and systemic deficiencies that violated the Plaintiff's constitutional rights. Based on information and belief, not one officer, supervisor, or any other person was disciplined, considered for discipline, or even retrained on policies intended for the protection of inmates. Instead, the policymakers approved the actions of the jailers and therefore ratified those actions.

51. Through these acts and omissions of ratification, Hinds County's policymakers were deliberately indifferent to Plaintiff's constitutional rights as set forth herein. A plaintiff can establish a municipal liability claim by showing that a final municipal policymaker approved an investigation that was "so inadequate as to constitute a ratification" of the misconduct. *Wright v. City of Canton*, 138 F. Supp.2d 955, 966 (N.D. Ohio 2001). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). An isolated decision by a municipal official that is not intended to control future decisions can nonetheless give rise to municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Hinds County ratified the actions of its employees and is therefore liable for the Plaintiff's injuries.

## PUNITIVE DAMAGES

52. The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 51 hereinabove.

53. Sheriff Jones and Doe Defendants acted in complete disregard for the safety of the Plaintiff by acting in a manner as previously described herein. Defendant Sheriff Jones' and the Doe Defendants' actions, all in their individual capacities, warrant punitive damages to deter similar conduct in the future.

## PRAYER FOR RELIEF

Plaintiff respectfully prays for the following relief:

A. Compensatory damages of, from and against the Defendants, in amount to be determined by this Court.

B. Punitive damages of, from and against Defendant Sheriff Jones and Doe Defendants, all in their individual capacities, in an amount to be determined by this Court.

C. Payment of medical expenses.

D. Reasonable attorney's fees and all costs of this court.

E. Pre and post judgment interest.

F. Such other general and special relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the 31st day of May, 2024.

**JOSEPH BROWN**

BY:   */s/ Courtney D. Sanders*
      COURTNEY D. SANDERS

**OF COUNSEL:**

CHARLES R. MULLINS (MB# 9821)
COURTNEY D. SANDERS (MB# 106444)
COXWELL & ASSOCIATES, PLLC
500 N. State St.
Jackson, Mississippi 39201
Telephone: (601) 948-1600
Facsimile: (601) 948-7097
chuckm@coxwelllaw.com
courtneys@coxwelllaw.com
***Attorneys for Plaintiff***